KING *v.* KING *et ux.*

(Division B. June 13, 1938.)

[181 So. 850. No. 33277.]

B. F. Worsham, of Corinth, and J. A. Cunningham, of Boonville, for appellant.

534

G. C. Moreland and W. C. Sweat, both of Corinth, for appellee.

Argued orally by **Jas. A. Cunningham,** for appellant, and by **W. C. Sweat,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, a sister of G. J. King, filed a bill in the Chancery Court against him and his wife, Myrtle King, alleging in the original bill that in the year 1930 she lost her husband, Mr. Kemp, and then went to live with her brother, G. J. King, and his wife, after having been in the hospital for treatment, her health being bad. Her brother and his wife at that time lived in their home in the city of Corinth. Some time after going to live with them, it was learned that a party in the country wished to sell a farm to G. J. King; and the appellant, Laura E. King, was anxious to move to the country, believing that it would improve her health. The price of the farm was $2,100.00, and the appellant offered to advance $1,000.00 in cash on the price, and the balance of $1,100.00 as soon as she could make some collections on debts owing to her. This arrangement was carried into effect, and the appellant, then Mrs. Kemp, advanced the money to pay for the farm, taking a deed of trust from G. J. King to secure the $2,100.00. Afterwards the appellant married a man from New York by the name of King, but no relation of the appellant or appellee prior to such marriage. Shortly after this marriage the appellant, at the instigation of her husband, made demands upon G. J. King for a conveyance in fee simple of the house and lot in Corinth to her; G. J. King had deeded this property to the appellant, conveying to her a life estate, some years prior to appellant's marriage to her last husband.

During the period that appellant lived with the appellees, Mrs. Myrtle King, wife of G. J. King, was working in the city of Corinth, and did not wish to move to the country, but after the purchase of the farm, as above stated, she and her husband moved to the farm. After

the giving of the deed of trust, and sometime prior to the last marriage of the appellant, it was agreed between the appellant and the appellees that the former would accept a deed to a life estate in the house and lot in Corinth, of the approximate value of $1,800.00, in satisfaction of the deed of trust. From the time of the purchase of the farm the appellant lived with the appellees for several years, it being agreed that there would be no interest on the deed of trust, and the appellees would charge appellant no board during this period. Subsequently the appellant desired to live in Corinth, and it was then agreed that she should have some person she knew to live in the house with her, and board her for the rent; which arrangement was made.

When the deed to the house and lot in Corinth, to be made to the appellant, was under consideration, it seemed to be entirely satisfactory to the appellant, who at one time had been regarded as insane, and was considered below normal in intelligence, or weak-minded. It was stated that the reason for not making the deed in fee simple was because of her mental condition prior thereto which would interfere, in case she wished to sell it, with its purchase by any prospective purchaser. The appellant had then made a will in which her brother, the only immediate member of her family living, would get whatever she had at her death; and this entered into the negotiations as a reason for making it a life estate, instead of a fee simple title to the appellant. Her testimony shows that she understood the nature and quality of the transaction, and that she was at that time thoroughly satisfied with the arrangement.

She afterwards moved to Corinth, under an arrangement with some friend, and lived in the home, under the condition that the lessee would board or support her in return for the rent. Subsequently, in some manner, the appellant entered into a correspondence with her present husband, whom she had never seen until he came on to

marry her, and the marriage was consummated. Shortly thereafter the appellant wrote to her brother, demanding a fee simple title to the house and lot in Corinth, who wrote her that he was willing to make a deed in her favor according to her ideas, and suggested that she meet him at the office of the Chancery Clerk or Chancellor, for the purpose of making an adjustment of the matter. In answer to which letter the appellee, G. J. King, received a sharp and insulting letter from the husband of the appellant, the terms of which it is unnecessary to set out here. The meeting was declined and the bill was filed in the case.

On the hearing the Chancellor found that the appellant had mental capacity to know and understand the nature and quality of the transaction at the time of making the deal in which she received the life estate to the house and lot, and denied the relief prayed for. We think the evidence was ample to sustain the Chancellor's finding to this effect. Indeed, the testimony of appellant, as a witness, shows that she understood the nature of the transaction at the time, and was then thoroughly satisfied with it.

An effort was made to show the mental state of the appellant, independently of whether or not she knew the nature and quality of the act. In other words, it is contended that the Chancellor erred in not receiving evidence to show that she was weak-minded or feeble-minded, and although she might be competent to judge of the nature and quality of the act, that this evidence should have been admitted. We think the Chancellor was warranted in holding evidence inadmissible that did not go to the extent of showing incapacity. There was no evidence which would warrant the Chancellor in believing that the appellee sought to take any advantage of the appellant in the deal, or that he sought to exercise any undue or coercive influence to obtain satisfaction of the deed of trust, in consideration of the deed to the prop-

erty. It appears that the dissatisfaction began with, and was the result of, the marriage of the appellant to her last husband.

The judgment of the court below is affirmed.

Affirmed.